## In re Johanna Kersling.

*Harry A. Jones*, for accountant.

*Edward T. Petrello*, Deputy Attorney-General, and *Ralph W. Peacock*, for Commonwealth.

*Byron E. Tombaugh*, for administrator.

BROWNSON, P. J., Nov. 5, 1928.—The paper, marked "Exceptions to the Report of Guardian," which has been filed by the Deputy Attorney-General, does not contain anything properly amounting to an exception to the guardian's account. It does not seek to have the accountant charged with any asset not already accounted for, nor does it question the propriety of any disbursement for which the accountant has taken credit. Its real nature is that it is the presentation against the estate of the weak-minded person of a claim, under the Act of June 1, 1915, P. L. 661, as amended by Act of May 10, 1921, P. L. 438, for the reimbursement of the Commonwealth for moneys which she has expended for the maintenance of the ward in the Dixmont Hospital. The account exhibits a balance in the accountant's hands which is sufficient to pay it, being almost two and one-half times its amount. (The county appears to have been already paid its similar claim.) Proof of the amount due the Commonwealth has been made in the form and manner prescribed by the statute.

The ward died on Aug. 18, 1928, and after her death this account was filed as the guardian's final account. The only question for determination is that raised by the claim which the administrator of the deceased has advanced, viz., whether the decree of distribution to be made upon this account should embrace an award to the Commonwealth of the amount of the claim presented or the whole of the balance in the accountant's hands should be awarded to the administrator.

It is clear that the Court of Common Pleas should not, after the death of a lunatic or weak-minded person, undertake to make a distribution of the estate among next of kin or ordinary creditors of the deceased, but should turn it over to an administrator for distribution according to law under the direction of the Orphans' Court: Frankenfield's Appeal, 11 W. N. C. 373; Blake's Estate, 4 Montg. Co. Law Repr. 147; though it seems to be clear, also, that any liability, in the form of administration expenses or otherwise, which the committee or guardian has, under authority from the Common Pleas, incurred during the administration of his trust, that court has the power to, and ordinarily should, cause to be paid out of the estate while still in its grasp. See Rutty's Appeal, 84 Pa. 61, 65. In this case, as the record shows that the accountant was appointed as guardian merely to take care of the ward's property, and the court appears never to have made an order directing the guardian to reimburse the Commonwealth and no claim appears to have been presented by the latter during the ward's lifetime, the present claim would perhaps not come within the second category referred to in the preceding sentence. Judge McIlvaine made such a ruling in a similar case, decided on April 10, 1916, Lunacy of John W. Elliott, No. 390, in Equity; and on that basis he in that case awarded the entire balance to the administrator, turning the Commonwealth over to the Orphans' Court as the forum in which to assert the claim. We must, however, take into consideration some legislation on this subject, including some enacted since that decision. On May 10, 1921 (P. L. 438), section 4 of the Act of June 1, 1915, P. L. 661, was amended so as to provide that "the Court of Common Pleas shall, upon the application of the Attorney-General, make an order for the payment of maintenance to the Commonwealth upon the trustee, committee, guardian or other person who has charge of the estate of any such inmate." Thereby a special statutory jurisdiction was conferred upon the Court of Common Pleas, the exercise of which is by the amendment made mandatory. This statutory grant of jurisdiction was not considered nor adverted to in the Elliott case, the opinion considering only the question of what jurisdiction would result to the court from the fact that by it lunacy had been adjudicated and the committee had been appointed, without making any mention of, or reference to, section 4 of this statute, then but recently enacted. But the jurisdiction granted by this statute does not depend upon whether the custodian of the fund does or does not hold it under an appointment made by that court: Walters' Case, 278 Pa. 421; In re Theresa Spangler, 3 D. & C. 616; In re Alice Spangler, 39 York Leg. Record, 25. In those cases, it was held that the Common Pleas had jurisdiction to make an order upon a testamentary trustee holding for the lunatic under a spendthrift trust. Therefore, the circumstance that by the death of the lunatic the active functions or duties conferred upon the committee or guardian by his appointment may have terminated, save as to the doing of such things as are necessary to effect a settlement and distribution of the estate in his hands, would not necessarily take him out of the operation of this statute; after such death he holds the funds in his hands subject to a trust in favor of whoever has succeeded to the rights of the deceased, and he is a "trustee . . . or other person who has charge of the estate." In the case of In re Frank Hoffmann, 258 Pa. 343, 346, it was said that "the provisions of section 6 [of the Act of 1915] expressly contemplate the presenting of the Commonwealth's claim [to the Common Pleas] in proceedings to distribute the estate of the person maintained." This may be (as to a case like the present one) an *obiter dictum,* as it seems to be inferable from the report that the insane person was still alive. Erwin's Estate, 11 D. & C. 20, how-

ever, involved the very question now for determination. The weak-minded person had died on Jan. 1, 1927, and on Aug. 17, 1927, after the filing of the guardian's final account, the Commonwealth petitioned the Common Pleas of York County for an order under the Act of 1915 and its amendment of 1921. The court made a decree distributing the balance shown by the account, less costs, to the Commonwealth and the county *pro rata*, that balance being insufficient to reimburse both, in full, for what they had respectively paid for the ward's maintenance in a State hospital.

We think it is clear that by the Acts of 1915 and 1921 a new and special jurisdiction has been conferred upon the Common Pleas and that under them the Commonwealth is entitled to receive from that court a distribution award upon its claim, when there are funds available, and is not bound to await the settlement of the decedent's estate in the Orphans' Court and then resort to that forum.

And now, Nov. 5, 1928, the account of the guardian is finally confirmed, and it is ordered and decreed that the accountant do pay to the Commonwealth of Pennsylvania, as reimbursement for payments made on account of maintenance of the ward in the Dixmont Hospital, the sum of $953.14, and that the remainder of the balance exhibited by the account (less any unpaid taxed costs of the proceedings prior and subsequent to the filing of the account, which costs are to be paid out of said balance) shall be paid over by the accountant to George E. Adams, administrator of the estate of Johanna Kersling *(alias* Kerslin), deceased.

From Harry D. Hamilton, Washington, Pa.