allegations of the complaint that if the plaintiff performed the duties of his office he is entitled to recover a definite and fixed sum over and above all sums to be charged against him, viz., the said sum of $300, so deposited by him, and that hence an accounting is not necessary in order to determine the amount due.

[2] The plaintiff has not submitted a brief, but it is evident from a reading of the complaint that the right to an accounting, which is prayed for, is sought upon the theory that there is a fiduciary relationship between the parties; but in such an action it must appear, not only that an accounting is necessary to determine the amount due, but that the party called to account has been intrusted with property of the plaintiff and is bound to show his dealings with it (Seaward v. Davis, 133 App. Div. 191, 193, 117 N. Y. Supp. 468), which is not the case here.

[3] Another prayer for relief is that the entry of an item of $360, or thereabouts, entered by the plaintiff in his books, be corrected by changing that amount to $116. There is no occasion, however, to come into a court of equity to procure a correction of the books. The plaintiff's rights do not depend upon the books, but upon the facts of the case. If the entries in the books are wrong, they can be explained in an action at law as well as anywhere else. It is thus apparent that the plaintiff has stated no cause of action either at law or in equity, and it seems clear that if he has any cause of action it is a simple action at law to recover the amount of his deposit.

[4] Even if the elements necessary to constitute such a cause of action were here stated, the demurrer would nevertheless have to be sustained, for the reason that the plaintiff has demanded equitable relief solely, and his cause of action must consequently be tested as one in equity. Black v. Vanderbilt, 70 App. Div. 17, 74 N. Y. Supp. 1095; Kelsey v. Distler, 133 App. Div. 916, 117 N. Y. Supp. 1084; Dingwall v. Chapman, 63 Misc. Rep. 193, 116 N. Y. Supp. 520.

The demurrer is therefore sustained, with costs, with leave to the plaintiff to amend within 20 days on payment of such costs.

---

### In re SCHWARTZ.

(Supreme Court, Appellate Division, First Department. June 9, 1911.)

1. WILLS (§ 673*)—CONSTRUCTION—INTEREST GIVEN.

    A will giving testatrix's property to her brother "for his own use and benefit forever, but he being confined in the R. Sanitarium, suffering from insanity, I direct my * * * executrix * * * to take the proceeds of my estate as above mentioned and to deposit same * * * as a trust fund for my brother, * * * with directions that the principal and interest shall be used for his maintenance," created a trust for the brother's maintenance, and did not give the property to him absolutely; and, he having been removed from such sanitarium to a state hospital, the sanitarium is entitled to payment of its claim out of the trust fund before the state hospital.

    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1582–1584; Dec. Dig. § 673.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRUSTS (§§ 11, 25*)—CREATION—ESSENTIALS.

    A trust of personalty may be created for any lawful purpose, and no particular form of words is necessary.

    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 9, 34–37; Dec. Dig. §§ 11, 25.*]

3. INSANE PERSONS (§ 40*)—AUTHORITY OF COMMITTEE—TRUST PROPERTY.

    In a testamentary trust for the maintenance of testatrix's insane brother in a sanitarium, the executrix being trustee, the committee was not entitled to the fund, and, having received it, is properly treated as the executrix's agent, permitting an order directing him to make proper disposition of the fund.

    [Ed. Note.—For other cases, see Insane Persons, Cent. Dig. § 62; Dec. Dig. § 40.*]

    Laughlin, J., dissenting.

Appeal from Special Term, New York County.

In the matter of the judicial settlement of the account of Louis J. Schwartz, as committee of the estate of Thomas J. Patton, incompetent. From an order directing the committee to pay certain moneys for the support and maintenance of the incompetent, the River Crest Sanitarium appeals. Reversed, and order entered.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Leopold Spitz and Huntington W. Merchant, for appellant.

Harry W. Mack, for respondent.

SCOTT, J. This appeal presents the question as to the proper disposition of a sum of money left by one Mary E. Patton for the care of her brother, Thomas Patton, an incompetent. In February, 1902, Thomas Patton was committed to the appellant, River Crest Sanitarium, as an incompetent person, and at some time, as it appears, the above-named Louis J. Schwartz was appointed the committee of his estate. Patton at that time was in apparently prosperous circumstances, but his fortune declined and has finally disappeared. His sister, Mary E. Patton, preserved her interest in him until his death, calling from time to time at the sanitarium to pay his bills. . She died on April 29, 1908, leaving a will which undertook to make provision for his care. Patton remained in the sanitarium until March 26, 1909, when he was removed to the Central Islip State Hospital. At that time there was due to the River Crest Sanitarium the sum of $302.96 for the board and care of said incompetent.

The accounts of the above-named committee show that he holds in his hands the sum of $444.32, of which $23.25 came from the sale of property belonging to the incompetent, and the balance came from the estate of the sister, Mary E. Patton, deceased. The Central Islip State Hospital claims $383.64 of this amount for the maintenance of said Patton since his admission to that hospital, resting its claim upon section 86 of the insanity law (Consol. Laws 1909, c. 27), which provides as follows:

    "In all claims of the state upon the relatives liable for the support of a patient, or upon moneys or property held by said patient, the state shall be deemed a preferred creditor."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] It does not appear that there are any relatives liable for the support of Patton, and it therefore remains to be determined whether the fund out of which the state seeks payment belongs to Patton. As has been said, practically all of the fund came from his sister, under her will, which reads as follows:

"First: After my lawful debts are paid, I give and bequeath all my estate, money in bank, real property, personal property or mixed to my brother Thomas Patton for his own use and benefit forever, but he being confined in the River Crest Sanitarium, suffering from insanity, I direct my executor or executrix herein named to take the proceeds of my estate as above mentioned and to deposit same in some trust company as a trust fund, for my brother Thomas Patton, with directions that the principal and interest shall be used for his maintenance and support until the entire principal and interest shall be exhausted. I hereby appoint May J. Connerton to be executrix of this my last will and testament, I hereby revoking all former wills by me made."

The will is not skillfully drawn, and seems to include two inconsistent dispositions of the estate. The first clause, if it stood alone, would seem to indicate an intention to make a direct gift to the brother of her residuary estate. Reading the whole will together, it is apparent that this was not the testatrix's purpose, for she explicitly directs that the estate shall constitute a trust fund to be used for the brother's maintenance and support as an incompetent person; the River Crest Sanitarium being the institution then uppermost in her mind.

[2] A trust of personalty may be created for any lawful purpose, and no particular form of words is necessary to create it. Reading the whole will together, it is apparent that the purpose of the testatrix was to devote her entire estate to the use and benefit of her brother, and that to accomplish this purpose she created a trust. As no other trustee was named, the duty to execute it fell upon the executrix, and it was her distinct duty to erect the trust fund contemplated by the will, and to pay for the maintenance of the incompetent as the charges therefor accrued until the whole amount was eaten up. If she had done this, the charges of the River Crest Sanitarium would have been paid down to the time that the incompetent left that institution. Whatever was left might thereafter properly have been paid to the state hospital until it was exhausted.

[3] The papers do not disclose how the funds of Mary E. Patton's estate came to be paid to her brother's committee. As we construe the will, he never became entitled to them as committee. The committee has, however, in some way, come into possession of the fund; but that fact does not make it the property of the incompetent, for the executrix, by parting with the fund, could not defeat the intention of the testatrix. The above-named Louis J. Schwartz must be deemed to have received and to hold the money coming from the estate of Mary E. Patton, deceased, as the agent of the executrix, and subject to the trust created by the will of Miss Patton, and he can properly be directed to make the same disposition of it that the executrix should make, if she had retained the fund.

The order appealed from, which awards the full amount of its claim to the Central Islip State Hospital, must be reversed, and the said committee directed to pay first to the River Crest Sanitarium Company the amount due to it for the care of the incompetent down

to the time he left that institution, with interest, and the remainder of the funds in his hands, not otherwise applicable, to the Central Islip State Hospital. Settle order on notice.

INGRAHAM, P. J., and CLARKE and MILLER, JJ., concur.

LAUGHLIN, J. (dissenting). The only theory on which the Supreme Court can, on application to it by motion, exercise jurisdiction to direct the distribution of the fund in the hands of the committee of the property of the incompetent person, is that such fund has become part of the estate of the incompetent; and since it is in the hands of the committee as such, I think it must be regarded as part of said estate. If so, then the claim of the state is preferred under the statute and the order is right. As I view the case, no question with respect to the construction of the will of Mary E. Patton, the sister of the incompetent, is presented for decision, and I therefore express no opinion as to whether the River Crest Sanitarium took any property or interest in property thereunder; but, if it did, it would seem that its remedy would be to call the executor to account.

